**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | |
|---|---|
| SHAREHOLDER REPRESENTATIVE SERVICES LLC solely in its capacity as Equityholder Representative, | ) ) ) ) |
| Plaintiff, | ) C.A. No.: 2023-1106-EMD ) |
| v. | ) ) |
| RENESAS ELECTRONICS CORPORATION, | ) ) ) |
| Defendant. | ) |

Submitted: September 5, 2024
Decided: December 3, 2024
**Redacted: December 20, 2024**

*Upon Defendant's Partial Motion to Dismiss*
***GRANTED in part and DENIED in part***

Rudolf Koch, Esq., Daniel E. Kaprow, Esq., Richards, Layton & Finger, P.A. Wilmington, Delaware, Lloyd Winawer, Esq. John D. Pernick, Esq., Susan Bower, Esq., Bergeson LLP, San Jose, California. *Attorneys for Plaintiff Shareholder Representative Services LLC.*

David J. Teklits, Esq., Emily C. Friedman, Esq., Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware, Jeffrey A. Simes, Esq., Samuel J. Rubin, Goodwin Procter LLP, New York, New York, S. Toni Wormald, Esq., Goodwin Procter LLP, San Francisco, California. *Attorneys for Defendant Renesas Electronics Corporation.*

**DAVIS, J.**

## I. INTRODUCTION

This is a breach of contract action.[1]  Plaintiff Shareholder Representative Services LLC

("Equityholder Representative," or "Plaintiff"), in its capacity as Equityholder Representative,

alleges that Defendant Renesas Electronics Corporation ("Renesas") breached the terms of a

2021 Merger Agreement governing Renesas's acquisition of non-party Celeno Communications

---

[1] The Court of Chancery assigned the action to this Court on November 6, 2023, pursuant to the February 23, 2023 Cross-Designation Order under 8 *Del. C*. § 111.  *See* Cross-Designation Letter and Order (D.I. No. 5).

Incorporated ("Celeno"). Plaintiff seeks damages and specific performance of certain contractual provisions.

Plaintiff filed its Verified Complaint on October 31, 2023.[2] Renesas moved to partially dismiss the Verified Complaint.[3] On February 28, 2024, Plaintiff then filed a Verified Amended Complaint (the "Amended Complaint").[4] The Amended Complaint asserts four breach of contract claims—Count One through Count Four (discussed more fully below).

Now before the Court is Defendant's Partial Motion to Dismiss (the "Motion").[5] The Motion seeks dismissal of Counts One, Two, and Four of the Amended Complaint. Plaintiff opposes the Motion and filed Plaintiff's Answering Brief in Opposition to Defendant's Partial Motion to Dismiss (the "Opposition").[6] Renesas then filed Defendant Renesas Electronics Corporation's Reply Brief in Support of Its Partial Motion to Dismiss the Verified Amended Complaint (the "Reply").[7] The Court held a hearing on the Motion, the Opposition and the Reply on September 5, 2024.[8] At the end of the hearing, the Court took the Motion under advisement.

For the reasons stated below, the Court **GRANTS in part and DENIES in part** the Motion.

---

[2] D.I. No. 1.

[3] D.I. No. 6; Defendant Renesas Electronics Corporation's Opening Brief in Support of its Partial Motion to Dismiss the Verified Complaint (Jan. 8, 2024) (D.I. No. 17).

[4] Hereinafter "Am. Compl." (D.I. No. 21).

[5] D.I. No. 24. *See also* Defendant Renesas Electronics Corporation's Opening Brief in Support of Its Partial Motion to Dismiss the Verified Amended Complaint (hereinafter "MTD") (D.I. No. 25).

[6] Plaintiff's Answering Brief in Opposition to Defendant's Partial Motion to Dismiss (hereinafter "Opp'n") (D.I. No. 36). *See also* Defendant Renesas Electronics Corporation's Reply Brief in Support of Its Partial Motion to Dismiss the Verified Amended Complaint (hereinafter "Reply") (D.I. No. 39).

[7] D.I. No. 39.

[8] D.I. No. 44.

## II.    RELEVANT FACTS

### A. THE PARTIES AND RELEVANT NON-PARTIES

#### 1. *Plaintiff*

Plaintiff is a Colorado limited liability company with its principal place of business in Colorado.[9]  Plaintiff is the designated representative of the former Celeno Equityholders.[10]  Plaintiff initiated this civil action in that capacity.[11]

Non-party Celeno is a supplier of semiconductors for wireless communications.[12]  It was founded in 2005 by Gilad Rozen  and is headquartered in Israel.[13]  Mr. Rozen continued with Celeno after the merger, managing Celeno's operations including the project at issue in this civil action, the [REDACTED] Product.[14]  Mr. Rozen also serves on the Equityholder Representatives "Advisory Group" created by the Merger Agreement.[15]  Mr. Rozen "executed the Merger Agreement on behalf of Celeno as its CEO . . . ."[16]

As a result of the merger, Celeno is a wholly owned subsidiary of Renesas.[17]

#### 2. *Defendant*

Renesas is a Japanese corporation with its principal place of business in Tokyo, Japan.[18]  Renesas is "a global semiconductor solutions company."[19]

---

[9] Am. Compl. ¶ 4.
[10] Opp'n at 6 (citing Am. Compl. ¶ 4).
[11] *See* Merger Agreement § 11.01(a).  SRS replaced Fortis Advisors LLC as the Equityholder Representative on July 9, 2023.  Am Compl. ¶ 1 n.1; MTD at 4.  SRS refers to both Fortis and SRS as "Equityholder Representative."  *See* Opp'n at 1 n.1.
[12] MTD at 1.
[13] Am. Compl. ¶ 8.
[14] *Id.* ¶ 24; MTD at 3, 4.
[15] MTD at 5 n.8 (citing Am. Compl. ¶¶ 24, 50).
[16] *Id.* at 5.
[17] Am. Compl. ¶ 1.
[18] *Id.* ¶ 5.
[19] MTD at 1.

## B. THE PARTIES' PRE-MERGER RELATIONSHIP

In 2020 and 2021, Celeno began developing a "groundbreaking mixed-signal semiconductor chip" (also known as an Application Specific Integrated Circuit or ASIC) named the [REDACTED] Product.[20] The [REDACTED] Product was "slated to be the world's first single chip solution for client devices combining Wi-Fi 6/6E, BT/BLE (Bluetooth/Bluetooth Low Energy) 5.2 and Celeno's novel Wi-Fi Doppler Radar."[21]

In October 2020, Celeno and a Renesas affiliate, Renesas Electronics (Penang) Sdn. Bhd ("Renesas (Penang)"), entered into a resale agreement under which Celeno granted Renesas (Penang) the future right to sell the as-yet unreleased [REDACTED] Product.[22] That agreement expressly contemplated that the [REDACTED] Product would be "taped-out"—or ready for manufacture—by April 2022.[23]

On March 31, 2021, Renesas and Celeno executed a Letter of Intent ("LOI").[24] Under the LOI, Renesas would acquire Celeno in "an all-cash acquisition of Celeno at a valuation of $315,000,000, inclusive of agreed-upon development milestones relating to the [REDACTED] Product."[25]

The LOI contemplated a closing date of July 1, 2021.[26] However, in May 2021, Renesas notified Celeno that Renesas would be unable to meet the July target date due to a March 2021 fire at Renesas's Naka Factory in Japan.[27] According to Plaintiff, Renesas's [REDACTED] then "personally requested that Celeno temporarily suspend acquisition negotiations, assuring

---

[20] Opp'n at 6 (citing Am. Compl. ¶¶ 10-15); *see also* Am. Compl. ¶ 2; MTD at 1.
[21] *Id.*
[22] *Id.* at 9 (citing Am. Compl. ¶ 10).
[23] *Id.* (citing Am. Compl. ¶ 10); *see also Definition of Taped-Out*, PC MAG, https://www.pcmag.com/encyclopedia/term/taped-out (last visited Aug. 9, 2024).
[24] Am. Compl. ¶ 11.
[25] *Id.*
[26] *Id.* ¶ 12.
[27] *Id.* ¶ 14.

Celeno's Board of Directors that Renesas would proceed with the transaction in October or November 2021."[28] Due to "the parties' relationship, prior acquisition discussions, and explicit and implicit trust, Celeno's Board of Directors agreed to [REDACTED]'s request, even with the four-to-five month delay to closing that it would cause and the significant additional closing risk that it imposed on the sellers."[29]

Also in May 2021, Celeno publicly announced the launch of the [REDACTED] Product.[30] Renesas and Celeno continued to negotiate a merger, despite the receipt—and rejection—by Celeno of "two acquisition offers that were financially superior to Renesas's proposal."[31] Nevertheless, Celeno's Board of Directors declined the other offers and continued to negotiate and then execute the Merger Agreement on the extended timetable requested by Renesas.[32]

### C. THE MERGER

On October 28, 2021, Renesas, Clapton Acquisition Corporation ("Merger Sub"), Celeno, and Fortis Advisors LLC ("Fortis") in its capacity as the representative of the Equityholders[33] entered into an Agreement and Plan of Merger (the "Merger Agreement").[34] On July 9, 2023, Plaintiff replaced Fortis "as the representative of the equityholders appointed to represent Celeno's former securityholders under the Merger Agreement."[35]

Also on October 28, 2021, Renesas announced the acquisition.[36] Renesas stated that "it 'will acquire Celeno in an all-cash transaction valuing Celeno at approximately US$315 million .

---

[28] *Id.*
[29] *Id.*
[30] *Id.* ¶ 15.
[31] *Id.* ¶ 17.
[32] *Id.*
[33] *Id.* ¶ 1.
[34] D.I. No. 21 Ex. A.
[35] MTD at 4 (citing Am. Compl. ¶¶ 1 n.1, 4).
[36] Am. Compl. ¶ 18.

. . assuming the payment of certain milestone payments as set forth in the definitive agreement.'"[37]

The Merger Agreement provided for four future Earn-Out Milestone payments of up to $[REDACTED] in aggregate related to the [REDACTED] Product, in addition to the Base Cash Consideration of $[REDACTED] payable at Closing.[38] These payments are detailed below.

The merger closed on December 20, 2021.[39]

### D. THE MERGER AGREEMENT

The product development cycle (discussed below) is reflected in the Merger Agreement in the form of "three precise milestone or earnout payments that the sellers of Celeno would receive if certain work on the advanced chip was 'completed' in the months following the closing" and "a fourth milestone or earnout payment unrelated to the advanced chip."[40]

The relevant Merger Agreement provisions are:

Section 2.06. *Earn-out*.[41]

(a) Earn-Out.

(i) Tape-Out Milestone. In the event that on or prior to November 30, 2021 (the "**Tape-Out Deadline**"), the milestone described on Schedule 2.06(a)(i)[42] has been completed (the "**Tape-Out Milestone**"), then promptly after such completion, Parent shall pay, or cause to be paid, to each Earn-Out Participant an amount equal to such Earn-Out Participant's Earn-Out Pro Rata Share of $[REDACTED] less any Transaction Expenses payable with respect thereto (the "Tape-Out Milestone Amount"), less all applicable Tax withholdings." Notwithstanding the foregoing, in the event that the Tape-Out Milestone is completed at least five (5) Business Days prior to the Closing, then the Tape-Out Milestone Amount will be distributed

---

[37] *Id.* ¶ 18.
[38] Opp'n at 10-11 (citing Am. Compl. ¶ 20; Merger Agreement § 2.06(a)(i)-(a)(iv)).
[39] Am. Compl. ¶ 1.
[40] MTD at 1-2.
[41] Capitalization and typographical emphasis are as they appear in the Merger Agreement, or the Merger Agreement *as amended* (D.I. No. 26 Ex. 2).
[42] "Completion of final design all layer GDS file ready for full mask tape-out of WiFi 6 Chip for IoT applications (the '**[REDACTED] Product**') to Samsung with no DRC violations or with waivers with respect thereto accepted by Samsung." Merger Agreement Schedule 2.06(a)(i).

to Earn-Out Participants concurrently with the payment of the Aggregate Closing Consideration to such Earn-Out Participants.[43]

(ii) <u>Design-in Milestone</u>. . . .[44]

(iii) <u>Mass Production Milestone</u>. In the event that on or prior to November 30, 2022 (the "**Mass Production Deadline**"), the milestone described on <u>Schedule 2.06(a)(iii)</u> has been completed (the "**Mass Production Milestone**"), then promptly after such completion, Parent shall pay, or cause to be paid, to each Earn-Out Participant, an amount equal to such Earn-Out Participant's Earn-Out Pro Rata Share of $[REDACTED] less any Transaction Expenses payable with respect thereto (the "**Mass Production Milestone Amount**"), less all applicable Tax withholdings.[45]

(iv) <u>Open Source Remediation Milestone</u>. . . .[46]

The Merger Agreement also provided "grace period" provisions extending the dates for completion of each Milestone:

(v) <u>Grace Periods</u>. Notwithstanding anything herein to the contrary, in the event that:

(A) The Tape-Out Milestone is achieved within two (2) months of the Tape-Out Deadline;

(B) The Design-in Milestone is achieved within two (2) months and six (6) weeks of the Design-in Deadline (*provided* that if [REDACTED] Functionality is achieved on or prior to such extended date, then the Design-in Milestone Deadline shall be extended to December 31, 2022);

(C) The Mass Production Milestone is achieved within two (2) months of the Mass Production Deadline; or

(D) The Open Source Remediation Milestone is achieved within two (2) months of the Open Source Remediation Deadline;
then the applicable Milestone Deadline shall be extended to such date (and any references to such Milestone Deadline in this Agreement shall refer to such date).[47]

---

[43] Merger Agreement § 2.06(a)(i), *as amended* (D.I. No. 26 Ex. 2)

[44] *Id.* § 2.06(a)(ii). The Design-In Milestone is not at issue in this action. *See, e.g.*, MTD at 6; Opp'n at 12 n.3. Renesas notified the Equityholder Representative that the Design-In Milestone had been satisfied on September 19, 2022. Am. Compl. ¶ 46 n.8.

[45] *Id.* § 2.06(a)(iii), *as amended* (D.I. No. 26 Ex. 2).

[46] *Id.* § 2.06(a)(iv). The Open Source Remediation Milestone is not at issue in this action. *See*, e.g., MTD at 6; Opp'n at 12 n.3. Renesas notified the Equityholder Representative that the Open Source Remediation Milestone had been satisfied on March 7, 2023. Am. Compl. ¶ 46 n.8.

[47] *Id.* § 2.06(v)(A)-(D).

The Merger Agreement contains notice requirements relating to the Earn-Out.[48] Renesas was required under the Merger Agreement to provide notice to the Equityholder Representative when a Milestone had been achieved ("Milestone Satisfaction Notice") or not achieved ("Milestone Failure Notice").[49] In addition, Renesas was obliged to provide periodic updates.[50]

The Merger Agreement also provides for dispute notifications and resolution procedures.[51] Merger Agreement Section 2.06(b)(ii) controls notice when the Equityholder Representative disagrees as to Earn-Out Milestones.[52] Merger Agreement Section 2.06(b)(iii) provides a dispute resolution process.[53]

Renesas's funding obligations are described in Merger Agreement Section 2.06(d):

> (d) Parent Efforts. From and after the Closing, Parent shall have the power and right to control the operation of the Acquired Companies and their respective businesses and shall have no fiduciary or other duty to maximize the payment of the Milestone Amounts to the Earn-Out Participants; *provided*, *however*, during the period commencing on the Closing Date and ending on the earlier of the payment of the Mass Production Milestone and the Mass Production Deadline, Parent shall fund the Company's business as set forth on Schedule 2.06(d). In the event that prior to a Milestone Deadline (as such Milestone Deadline may be extended pursuant to Section 2.06(a)(v)), Parent or its Affiliate fails to fund the Company's business as set forth on Schedule 2.06(d) in a material respect, and such failure to fund would reasonably be expected to result in the failure of an Earn-Out Milestone with a Milestone Deadline after the date of such failure to fund (a "**Funding Failed Milestone**"), then any such Funding Failed Milestone shall be deemed earned and payable and promptly following the occurrence of such event, Parent shall pay to the Paying Agent and the 102 Trustee, as applicable, for further disbursement to the Earn-Out Participants, an amount in cash equal to the Milestone Amounts attributable to such Funding Failed Milestone and not yet paid, less all applicable Tax withholdings.

---

[48] *Id.* § 2.06(b)(i)(A)-(B).
[49] *Id.*
[50] *Id.*
[51] *Id.* § 2.06(b)(ii)-(iii).
[52] *Id.* § 2.06(b)(ii).
[53] *Id.* § 2.06(b)(iii).

Finally, Merger Agreement Section 13.11 provides for injunctive relief—*i.e.*, "Specific Performance"—in the event of breach.[54]

## E. PRODUCT DEVELOPMENT CYCLE

Renesas's non-payment of the two of the four Earn-Out Milestone Amounts is the subject of this civil action. The Milestones (and associated payment Amounts) are tied to the "complex, iterative, and intensive process" involved in the product development cycle for a "multi-modal communications semiconductor chip" such as the [REDACTED] Product.[55]

The development cycle begins with project architects defining the chip's requirements and specifications, after which the design phase commences.[56] After a detailed design is prepared, an actual layout of the chip is depicted in a Graphic Data System ("GDS") file.[57]

The GDS file is transmitted to a semiconductor fabrication facility ("Fab").[58] Each Fab has its own set of fabrication parameters, known as "design rules," and a process design kit ("PDK") used to model the fabrication process.[59] An automated electronic process called design rule checking ("DRC") is then performed to confirm that the chip design conforms with the Fab's design rules.[60] Plaintiff notes that, before taping out the design to a Fab, "engineers test the design to verify timing, validate functionality and performance and confirm there are no DRC violations or tape-out requirement violations that preclude the Fab from accepting the chip design."[61]

---

[54] *Id.* § 13.11.
[55] Am. Compl. ¶ 28.
[56] *Id.*
[57] *Id.;* and *id.* n.4.
[58] *Id.* ¶ 28 n.4.
[59] *Id.* ¶ 29.
[60] *Id.*
[61] *Id.*

Samsung was the Fab engaged to manufacture the [REDACTED] Product.[62] Samsung is "one of the world's leading semiconductor manufacturers" with "exacting manufacturing standards [that] are well known in the semiconductor industry."[63] Plaintiff states that "Samsung's standard procedure is to notify a customer, such as Celeno, only if the customer's chip design has DRC violations or other deficiencies that Samsung is not willing to waive."[64] Plaintiff asserts that "the Merger Agreement conveyed important discretion to Samsung" which "had the authority to accept or decline the tape-out of the [REDACTED] Product based upon Samsung's DRC and other tape-out requirements."[65]

As noted, "tape-out" is the final result of the design process that occurs before proceeding to manufacturing.[66] Plaintiff claims that:

> Typically, verification and testing continue after the first or initial tape-out (referred to as "Rev A") to further optimize and enhance the chip's performance with design improvements targeted for the next chip revision (*i.e.*, "Rev B," etc.). . . . For a complex, mixed-signal semiconductor ASIC, such as the [REDACTED] Product, a minimum of three or four tape-out "Revs" . . . would be expected. The last tape-out Rev to occur before the chip is put into mass production is referred to as a "mass production tape-out" or "MP tape-out." For ease of reference, any tape-out that occurs prior to MP tape-out is referred to herein as a "Pre-MP tape-out Rev."[67]

Finally, the mass production stage occurs "after extensive and detailed verification, validation, and qualification of the final revision of the chip."[68] This stage is often "performed by an outside contractor, ordinarily over the course of six to eight weeks after the taped-out chip

---

[62] *Id.* ¶ 28 n.5.
[63] *Id.*
[64] *Id.*
[65] *Id.* ¶ 35.
[66] *Id.* ¶ 30.
[67] *Id.*
[68] *Id.* ¶ 31.

is submitted to the testing contractor."[69]  According to Plaintiff, additional revisions and tape-outs may be required before the chip can be mass produced.[70]

### F.  POST-MERGER EVENTS AND LITIGATION

The November 30, 2021 Tape-Out Deadline had already passed when the Merger closed on December 20, 2021.[71]  The cause for this is in dispute.  The dispute centers on the design submitted to Samsung and whether the design had the requisite finality in order to meet this deadline (discussed below).

At the end of January 2022, Celeno transmitted the required GDS file (the "January 2022 GDS File") to Samsung in compliance with Schedule 2.06(a)(i).[72]  "The design set forth in the January 2022 GDS File was for a fully functional WiFi 6 Chip for IoT applications (*i.e.*, the [REDACTED] Product)."[73]  Plaintiff contends that this file "materially complied with the requirements of the Merger Agreement and Schedule 2.06(a)(i), consistent with common semiconductor industry practices and expectations, and provided Renesas with a fully functional, performing chip."[74]  Celeno subsequently also delivered a "February 2022 GDS File" to Samsung that "exceeded the Tape-Out Milestone requirements even though that enhanced performance was not required or expected by the parties when the Merger Agreement was signed."[75]

---

[69] *Id.*
[70] *Id.*
[71] *Id.* ¶ 36.
[72] *Id.* ¶ 37.
[73] *Id.*
[74] *Id.*
[75] *Id.* ¶ 38.

Plaintiff maintains that Samsung did not advise Celeno "of any DRC violations or of the existence of DRC violations that [Samsung] would not waive."[76] Celeno also notified Renesas that the Tape-Out Milestone was met.[77]

Renesas contends that the Tape-Out Milestone was not satisfied by the deadline specified in the Merger Agreement.[78] In addition, Renesas provided a "failure notice" on February 1, 2022.[79]

In mid-March 2022, "Samsung affirmatively confirmed that there were no DRC violations other than violations for which waivers had been granted."[80] Plaintiff argues that despite this, "Renesas continued to wrongly refuse to pay the Tape-Out Milestone."[81]

Nevertheless, on March 2, 2022, Plaintiff transmitted an Equityholder Objection Notice (the "March 2 Objection Notice") that: "(i) notified Renesas that prior to the end of the applicable Grace Period, Celeno had substantially performed the requirements of Schedule 2(a)(i) of the Merger Agreement, and (ii) requested payment of the Tape-Out Milestone Amount."[82]

In the March 2 Objection Notice, Plaintiff requested a meeting with Renesas's representatives under Merger Agreement Section 2.06(b)(iii) to discuss "any aspect of the Tape-Out Milestone that Renesas contended Celeno failed to complete."[83] Plaintiff contends that

---

[76] *Id.* ¶ 37.
[77] *Id.*
[78] MTD at 6-7; *see* February 1, 2022 Letter from Renesas Electronics Corporation to Fortis Advisors LLC (hereinafter "Tape-Out Milestone Failure Notice") (D.I. No. 26 Ex. 4).
[79] *Id.*
[80] Am. Compl. ¶ 40.
[81] *Id.*
[82] *Id.* ¶ 41; *see also* March 2, 2022 Letter from R. Simkin to Renesas Electronics Corporation (hereinafter "Mar. 2 Objection Notice") (D.I. No. 26 Ex. 5).
[83] *Id.* ¶ 56.

Renesas "refused" the meeting and communicated through counsel "its position that 'for there to be a good faith discussion, there needs to be a good faith dispute.'"[84]

On March 17, 2022, Renesas provided a Milestone progress update to Plaintiff, advising Plaintiff that Renesas expected to complete the remaining three Milestones.[85] With respect to the Mass Production Milestone, Renesas reported that "[p]reparation of different test set-ups needed to support milestone requirement on track" and "[t]his milestone has some dependency on progress of [sic] design-in milestone. But at this early stage, we expect this milestone to be completed by [sic] deadline date."[86]

On April 18, 2022, Plaintiff sent another letter to Renesas that explained "why Renesas's position (still unexplained and unsupported) . . . was wrong;" that "the January 2022 GDS File constituted satisfactory performance of the Tape-Out Milestone;" and that "the customary optimization work performed in February and incorporated into the February 2022 GDS File provided no reasonable basis for avoiding the payment of the Tape-Out Milestone Amount."[87]

Renesas issued a November 16, 2022 press release.[88] The press release disclosed that "Renesas's 'plans to deliver a comprehensive set of advanced Wi-Fi offerings' and proclaimed that Renesas was 'leveraging [Celeno's] technology to address a wide range of Wi-Fi client and access point applications for Wi-Fi 6/6E and Wi-Fi 7.'"[89]

Later that month, Renesas provided another update to Plaintiff as the Equityholder Representative.[90] Renesas reported that "[T]he engineering team expects to complete the

---

[84] Id.
[85] Id. ¶ 46.
[86] Id.
[87] Id. ¶ 42; see also April 18, 2022 Letter from L. Winawer to J. Olsen (hereinafter "Apr. 18 Objection Notice") (D.I. No. 26 Ex. 8).
[88] Id. ¶ 47.
[89] Id.
[90] Id. ¶ 48.

milestone by the Mass Production Deadline, as extended by the grace period contemplated by Section 2.06(a)(v)(C) of the Merger Agreement."[91]

However, "contrary to its prior progress updates, on March 7, 2023, Renesas transmitted a Milestone Failure Notice (the 'Mass Production Milestone Failure Notice'), informing the Equityholder Representative that the Mass Production Milestone had not been achieved."[92] On March 22, 2023, Plaintiff responded, writing "that the Mass Production Milestone Failure Notice contradicted the updates that Renesas had earlier provided and the facts as known to the Equityholder Representative."[93]

On April 13, 2023, Plaintiff sent an Equityholder Objection Notice to Renesas stating that Celeno had satisfied the requirements of Schedule 2.06(a)(iii) of the Merger Agreement.[94] Plaintiff noted that this required Renesas to pay the Mass Production Amount.[95] Moreover, Plaintiff maintained that "as a result of Renesas's failure to disclose any issue impeding the satisfaction of the Mass Production Milestone, Renesas was precluded from basing the Mass Production Milestone Failure Notice on purported performance failures, if any, that should have been previously reported."[96]

In this Objection Notice, the Equityholder Representative again asked for a meeting with Renesas's representatives.[97] The Equityholder Representative also requested "certain information that it deemed relevant to any good faith discussion of the issues. Renesas again

---

[91] *Id.*
[92] *Id.* ¶ 49; *see also* March 7, 2023 Letter from Renesas Electronics Corporation to Fortis Advisors LLC (hereinafter "Mass Production Milestone Failure Notice") (D.I. No. 26 Ex. 3).
[93] *Id.* ¶ 50; *see also* Mar. 22 Objection Notice.
[94] *Id.* ¶ 52; *see also* April 13, 2023 Letter from R. Simkin to Renesas Electronics Corporation (hereinafter "Apr. 13 Objection Notice") (D.I. No. 26 Ex. 7).
[95] *Id.*
[96] *Id.*
[97] *Id.* ¶ 58.

rejected the Equityholder Representative's requests and refused to participate in any meeting or discussion."[98]

On May 19, 2023, Renesas sent a letter to Plaintiff explaining why the Mass Production Milestone was not satisfied.[99] Reasons included:

- There was no passing data-sheet as of the Mass Production Deadline, and there is still no such passing data-sheet;

- There was no passing FCC certification test as of the Mass Production Deadline, and there is still no such passing FCC certification test; and

- The test program was not ready by the Mass Production Deadline and therefore there were no reliable yield and test times to measure.[100]

Further, "[d]ue to these and other serious flaws, Renesas explained that it 'will need to redesign the chip, which will restart the process and require a new tape-out.'"[101]

Plaintiff claims this letter was "inaccurate."[102] Plaintiff alleges that Renesas's refusal to pay the Mass Production Milestone Amount was based "on Celeno's failure to meet criteria that were not included in, or required, under the Merger Agreement."[103]

Plaintiff replied on July 24, 2023, claiming that Renesas's refusal to pay the Mass Production Milestone Amount was a breach of the Merger Agreement.[104] Renesas responded on September 29, 2023, and reiterated its position set out in the May 19, 2023 letter.[105]

This litigation followed on October 31, 2023. As noted, Plaintiff filed the Amended Complaint on February 28, 2024. Plaintiffs asserts four claims for recovery:

---

[98] *Id.*
[99] *Id.* ¶ 53.
[100] MTD at 16 (citing May 19, 2023 Letter from N. Katsell to L. Winawer (hereinafter "May 19 Letter") (D.I. No. 26 Ex. 1)).
[101] *Id.* at 17 (quoting May 19 Letter).
[102] Am. Compl. ¶ 53; *see also* May 19 Letter.
[103] *Id.*
[104] Am. Compl. ¶ 54.
[105] *Id.*

15

- Count I: Breach of Contract for Renesas's non-payment of the Tape-Out Milestone Amount, for which Plaintiff seeks payment of the same;[106]

- Count II: Breach of Contract for Renesas's non-payment of the Mass Production Milestone Amount, for which Plaintiff seeks payment of the same;[107]

- Count III: Breach of Contract based on Renesas "failing to provide Milestone progress reports regarding the Mass Production Milestone" and for which Plaintiff claims that Renesas should be "precluded or estopped under the terms of the Merger Agreement from claiming that the Mass Production Milestone was not met," and that, therefore, Plaintiff is entitled to payment of the Mass Production Milestone Amount;[108]

- Count IV: Breach of Contract based on Renesas "refusing to enter into good faith discussions with Plaintiff following the delivery of Plaintiff's Objection Notices regarding Defendant's determination that the Tape-Out Milestone and Mass Production Milestone had not been met," and for which Plaintiff claims to be entitled under the Merger Agreement to "enforce specifically Defendant's obligation" to engage in those discussions.[109]

## III. STANDARD OF REVIEW

Upon a motion to dismiss under Civil Rule 12(b)(6),[110] the trial court (i) accepts all well-pleaded factual allegations as true, (ii) accepts even vague allegations as well-pleaded if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[111] However, the court must "ignore conclusory allegations that lack specific supporting factual allegations."[112]

---

[106] *Id*. ¶¶ 60-64; *see also id*. ¶¶ 32-43.
[107] *Id*. ¶¶ 65-69; *see also id.* ¶¶ 44-54.
[108] *Id*. ¶¶ 70-77; *see also id.* ¶¶ 44-54.
[109] *Id*. ¶¶ 78-84; *see also id.* ¶¶ 55-59.
[110] The 12(b)(6) standard of review is identical in the Court of Chancery and Superior Court. *See CLP Toxicology, Inc. v. Casla Bio Holdings LLC*, 2020 WL 3564622, at *9 n.65 (Del. Ch. June 29, 2020) (collecting authorities).
[111] *See Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 227 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Academy,* No. 09C-09-136, 2010 WL 5825343, at *3 (Del. Super. Oct. 27, 2010).
[112] *Ramunno v. Crawley,* 705 A.2d 1029, 1034 (Del. 1998).

16

## IV. DISCUSSION

### A. PLAINTIFF STATES A CLAIM IN COUNT I AND COUNT II

To state a claim for breach of contract, "a plaintiff must show the existence of a contract, a breach of the contractual obligations, and damages to the plaintiff as a result of the breach."[113]

Delaware courts adhere to an "'objective' theory of contracts."[114] Under this approach, the Court reviews a contract's construction in a way that would be understood by an objective, reasonable third party.[115] "When the contract is clear and unambiguous, [courts] will give effect to the plain-meaning of the contract's terms and provisions."[116] "Contract terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language."[117]

A contract is not ambiguous "simply because the parties disagree about what the contract means."[118] Instead, "contracts are ambiguous 'when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings.'"[119]

Where contract language is ambiguous, the parol evidence rule allows a court to "consider all admissible evidence relating to the objective circumstances surrounding the creation of the contract."[120] "Such extrinsic evidence may include 'overt statements and acts of

---

[113] *Sparton Corp. v. O'Neil*, 2017 WL 3421076, at *5 (Del. Ch. Aug. 9, 2017) (citations omitted).

[114] *NBC Universal v. Paxson Commc'ns*, 2005 WL 1038997, at *5 (Del.Ch. Apr. 29, 2005).

[115] *Id.*

[116] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1160 (Del. 2010) (citing *Rhone–Poulenc Basic Chem. Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992) ("Clear and unambiguous language . . . should be given its ordinary and usual meaning.")).

[117] *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997).

[118] *United Rentals, Inc. v. RAM Holdings, Inc.*, 937 A.2d 810, 830 (Del. Ch. 2007) (citations omitted).

[119] *Id.* (quoting *Rhone–Poulenc*, 616 A.2d at 1196).

[120] *Concord Steel, Inc. v. Wilmington Steel Processing Co.*, 2009 WL 3161643, at *6 (Del. Ch. Sept. 30, 2009), *aff'd*, 7 A.3d 486 (Del. 2010) (citation omitted).

the parties, the business context, prior dealings between the parties, and business custom and usage in the industry.'"[121] However, "extrinsic evidence cannot be used to manufacture an ambiguity where one does not exist on the contract's face . . . ."[122]

Renesas argues that Plaintiff cannot state a claim under Count I or Count II because Plaintiff admits that: (i) Celeno only materially complied with and substantially performed the Tape-Out Milestone and (ii) Celeno met the Mass Production Milestone in all material respects.[123] Renesas maintains that these "admissions" negate and contradict the claim that Celeno 'completed' these Milestones as required by the plain language of the Merger Agreement.[124] Renesas contends that "Plaintiff is essentially asking the Court to re-write the Merger Agreement to say that Plaintiff is entitled to full payment of the Milestone Amounts if the Earn-Out Milestones are almost completed or materially completed in a period of time that is close to the parties' agreed-upon deadlines and grace periods."[125]

Renesas relies upon *Obsidian Finance Group, LLC v. Identity Theft Guard Solutions, Inc.* for the proposition that: "Earnout targets cannot be shrugged off with a 'close enough."[126] *Obsidian* explains:

> [A]n earnout provision contemplates the payout of additional, often substantial, consideration when the entity sold achieves specific, bargained-for milestones. The value of the contingent consideration is inextricably linked to the estimated probability of the contingent event's occurrence. To change the benchmark of the earnout would be to change its risk profile and, by extension, the amount that should be paid in the event of its achievement. Under Delaware law, however, "a party may not come to court to enforce a contractual right that it did not obtain for itself

---

[121] *United Rentals, Inc.,* 937 A.2d at 834-35 (quoting *Supermex Trading Co. v. Strategic Solutions Group, Inc.*, 1998 WL 229530, at *3 (Del. Ch. May 1, 1998)).

[122] *Id.* at 830 (citing *Eagle Indus.,* 702 A.2d at 1232).

[123] Reply at 3-4.

[124] *Id*. (emphasis supplied) (citing *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001) (citation omitted) ("[A] claim may be dismissed if allegations in the complaint or in the exhibits incorporated into the complaint effectively negate the claim as a matter of law.").

[125] MTD at 21(citing Am. Compl. ¶¶ 37–38, 41, 49).

[126] *Obsidian Fin. Grp., LLC v. Identity Theft Guard Sols., Inc*., 2021 WL 1578201, at *8 n.76 (Del. Ch. Apr. 22, 2021).

at the negotiating table."[127]  Unlike horseshoes or hand grenades, there is no "close enough" when it comes to earnouts negotiated by sophisticated parties based on the estimated probability that the precise measure would be hit. Any adjustment to the earnout condition, then, would be "material" as a matter of law.[128]

Renesas reasons that "[h]ere, too, the plain language of the Merger Agreement requires 'completion' of these Milestones—not substantial completion or material completion."[129] Further, Renesas points to multiple instances in the Merger Agreement discussing materiality as evidence that "[t]he parties spent a great deal of effort weaving the concept of materiality into their Merger Agreement, and they certainly understood how to qualify or limit an obligation by circumscribing it with the concept of materiality."[130]  Renesas contends that the lack of a materiality qualifier in the Tape-Out Milestone or the Mass Production Milestone "must be interpreted as [the parties'] intentional decision to exclude the concept of materiality from those Milestones."[131]

Renesas notes that timing pursuant to the Merger Agreement was similarly "precise."[132] Renesas provides that "the Merger Agreement anticipated and accounted for the prospect of delays (or potential close calls) in achieving the chip design requirements by expressly providing for a two-month 'grace period' to be added to the negotiated deadline."[133]

Plaintiff counters, contending that the Merger Agreement included the grace periods (and did *not* include a "time is of the essence" clause) "in recognition of the fluidity and complexity

[127] *Id.* (quoting *GRT, Inc. v. Marathon GTF Tech., Ltd.*, 2012 WL 2356489, at *7 (Del. Ch. June 21, 2012)).
[128] *Id.*
[129] MTD at 22 (citing Merger Agreement § 2.06(a)).
[130] *Id.* at 25-26; the Merger Agreement provisions identified are: 2.06(d); Art. III, §§ 3.01, 3.03, 3.06(b), 3.07, 3.08, 3.09, 3.10, 3.11(c), 3.12(m), 3.13, 3.14, 3.15 3.16, 3.17, 3.18, 3.19, 3.20, 3.22.
[131] *Id.* at 26 (citing *Crispo v. Musk*, 304 A.3d 567, 575 n.43 (Del. Ch. 2023) (citing *Delmarva Health Plan, Inc. v. Aceto*, 750 A.2d 1213, 1216 & n.12 (Del. Ch. 1999) (recognizing that the *expressio unius est exclusio alterius* canon applies in the contractual interpretation context)).
[132] *Id.* at 8, 30; *see also id.* at 31, noting Merger Agreement § 2.06(a) specifies that the Tape-Out Deadline required completion on or by January 30, 2022; and the Mass Production Milestone Deadline required completion on or by January 30, 2023.
[133] *Id.*

of the semiconductor chip design and development process . . . ."[134]  Further, Plaintiff argues that the grace periods "evidence[] that the parties did not intend the Merger Agreement's time frames to be strictly and absolutely construed . . . ."[135]

Renesas contends that "Plaintiff's claims would represent a sea change in how Delaware law addresses earn-out or contingent consideration in merger agreements. The 'manifest purpose' of earn-out consideration as recognized by Delaware courts is 'to allocate risk by requiring payment only upon the achievement of specific milestone events.'"[136]  Renesas argues that "this strict application of a contingent consideration structure" is what "enables commercial counterparties to bargain for higher valuation if indeed agreed-upon milestones are achieved."[137]  In sum, Renesas states that, because the "objective measures" detailed in the Merger Agreement's Milestones "were not completed to the extent and with the time frames the parties agreed upon (and, indeed, have yet to be achieved), the [REDACTED] Product has not reached the value both parties had hoped, and thus Plaintiff has not earned the additional consideration."[138]

In response, Plaintiff states that, fundamentally, the Amended Complaint alleges sufficient facts under Delaware's "liberal" pleading standards to state a claim and survive dismissal.[139]  Further, Plaintiff argues that the terms of the Tape-Out Milestone and the Mass Production Milestone are only properly understood in the "commercial context" in which the

---

[134] Am. Compl. ¶ 21

[135] *Id.* ¶ 42.

[136] MTD at 33 (quoting *Neurvana Med., LLC v. Balt USA, LLC*, 2020 WL 949917, at *19 (Del. Ch. Feb. 27, 2020)).

[137] *Id.* (citing *Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 132 (Del. Ch. 2009) ("In theory, the earn-out solves the disagreement over value by requiring the buyer to pay more only if the business proves that it is worth more.")).

[138] *Id.* (citing *Airborne Health*, 984 A.2d at 132 ("In theory, the earn-out solves the disagreement over value by requiring the buyer to pay more only if the business proves that it is worth more.")).

[139] Opp'n at 19.

Merger Agreement was drafted.[140]  Plaintiff therefore contends that because the terms are disputed, Renesas's claims that Plaintiff has "admitted" failure to achieve the Milestones as measured by the contract's "plain language" cannot justify dismissal.[141]

### 1. Delaware's "Liberal" Pleading Standard Nevertheless Requires Factual Support.

Plaintiff contends that Delaware law is clear that what is required to plead a claim for breach of contract is "only 'a short and plain statement of the claim.'"[142]  Plaintiff states it is therefore "not required to allege 'specific facts' or refute the defendant's stated version of the facts at the pleading stage. That is what summary judgment and trial are for. Renesas's Partial Motion to Dismiss the Verified Amended Complaint fails to heed the distinction."[143]  Renesas responds that "Plaintiff's argument that it need not plead specific facts and that it can proceed on the bare conclusory assertions that Renesas breached the contract is inconsistent with the pleading standards in this Court."[144]

Indeed, though a court considering a motion to dismiss "accepts as true all well-pled allegations in the complaint and draws all reasonable inferences from those facts in plaintiff's favor,"[145] it is not required to "accept every strained interpretation of the allegations proposed by the plaintiff"[146] or "credit conclusory allegations that are not supported by specific facts, or draw unreasonable inferences in the plaintiff's favor."[147]

---

[140] *Id.* at 21.
[141] *Id.* at 3-4.
[142] *Id.* at 2 (quoting *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 611 (Del. 2003)).
[143] *Id.*; see also *VLIW Tech.* 840 A.2d at 611 ("[A] complaint for breach of contract is sufficient if it contains a short and plain statement of the claim showing that the pleader is entitled to relief.  Such a statement must only give the defendant fair notice of a claim and is to be liberally construed.") (quotations and citations omitted)).
[144] Reply at 15 (citing Opp'n at 2, 20, 42).
[145] *Nemec v. Shrader*, 991 A.2d 1120, 1125 (Del. 2010).
[146] *Malpiede*, 780 A.2d at 1083.
[147] *Norton v. K-Sea Transp. P'rs L.P.*, 67 A.3d 354, 360 (Del. 2013).

Renesas contends that the Complaint asks the Court to do so, and that Plaintiff "merely recite[s] a contractual standard without factual support and declare[s] it was breached . . . ."[148]

Plaintiff does present several conclusory statements that the Complaint sufficiently alleges that the disputed Milestones were achieved seemingly *because* the Complaint alleges that the disputed Milestones were achieved. For example, two of Plaintiff's five "facts" in support of the contention that it had sufficiently alleged completion of the Tape-Out Milestone are quotes that Celeno "notified Renesas that the Tape-Out Milestone was met" (from Paragraph 37) and that "[T]he Tape-Out Milestone was satisfied" (from Paragraph 62).[149] Plaintiff further states that, like the Tape-Out Milestone, "the Amended Complaint alleges that Celeno met the Mass Production Milestone. Renesas is entitled to dispute that claim on the merits. That dispute, however, has no place at the pleading stage and provides no basis upon which to dismiss Count II of the Amended Complaint."[150]

Renesas argues that the Complaint effectively concedes failure by admitting non-compliance with the terms of the Merger Agreement. Plaintiff responds, in part, that this is not true because the Complaint also states that the Milestones *were* met. The "factual support" on which Plaintiff appears to rely is that, when interpreted in light of extrinsic, contextual evidence, the language of the Merger Agreement *may* validate Plaintiff's claims, and therefore dismissal is improper.

The Court is concerned that, at this early stage of the proceedings, Renesas is asking the Court to elevate the Amended Complaint's adjectives and adverbs into admissions against interest. The Court understand the "horseshoes and hand grenades" point made in *Obsidian*

---

[148] Reply at 16.
[149] Opp'n at 23-24.
[150] *Id.* at 47.

*Finance Group, LLC.* Moreover, the Court does not intend to create a "sea change" when addressing earn-out or contingent consideration in merger agreements. That said, the Court is not ready to find that Plaintiff has plead admissions against interest in the Amended Complaint. The Court admits this is a close call. Plaintiff could have used tighter language; however, Renesas created some of the pleading problem by refusing to engage in the dispute resolution processes set out in the Merger Agreement which could have foreclosed this litigation altogether.

### 2. *Plaintiff states a claim under Count I.*

Renesas contends that the Merger Agreement contains clear, agreed-upon terms for the Tape-Out Milestone, with Merger Agreement Section 2.06(a)(i) requiring the "'[c]ompletion of <u>final</u> design' of the relevant file 'ready for full mask tape-out' without design issues or with waivers 'accepted by Samsung,'" due by the Tape-Out Deadline of November 30, 2021.[151] Further, under Section 2.06(a)(v)(A), "the parties also negotiated and agreed to a two-month grace period to account for the potential for delays . . . which could extend the relevant deadline to January 30, 2022, in order to avoid potential disputes (such as this one) concerning alleged close calls in achieving Milestone deadlines . . . ."[152]

Plaintiff argues that the Tape-Out Milestone did not "in any way require the tape-out of a chip that successfully completed all the reliability, qualification and other testing necessary for mass production to commence (i.e., an MP tape-out)."[153] Plaintiff states this is "further evidenced by the vast gap—one-year or longer—in the Merger Agreement between the Tape-Out Milestone and the Mass Production Milestone" because that "gap anticipated and accounted for additional design revisions and one or more additional tape-outs after the achievement of the

---

[151] MTD at 9-10 (quoting Merger Agreement Schedule 2.06(a)(i), as amended) (emphasis added—not in original)).
[152] *Id.* at 9 (also citing Am. Compl. ¶ 36).
[153] Am. Compl. ¶ 34.

initial Tape-Out Milestone in order to reach an MP tape-out and thereafter commence mass production."[154] Plaintiff contends there are "obvious inferences that can objectively and clearly be drawn from this gap" and that Renesas also would not have been required to "pay the Tape-Out Milestone Amount well before the successful completion of the verification, validation, and qualification process set forth in Schedule 2.06(a)(iii) of the Merger Agreement (the Mass Production Milestone)" if "the Tape-Out Milestone required an MP tape-out as opposed to a Pre-MP tape-out Rev."[155]

Renesas disagrees that the "gap" "should be read to extend the Tape-Out Milestone indefinitely, and apparently coterminous, with the Mass Production Deadline" because that "cannot be reconciled with the plain language of the Merger Agreement."[156] Renesas contends that the two Milestones at issue "were each separate and independent milestones with separate and independent potential earnout payments associated with the 'full' and 'complete' satisfaction of their respective requirements. Accordingly, this interpretation (or 'obvious inference' Plaintiff asks the Court to draw) would render the separate and independent nature of the two milestones meaningless."[157]

Moreover, Renesas argues that Plaintiff concedes that that the Tape-Out Milestone was met in several ways. First, Renesas states that, contrary to the plain language of the Merger Agreement, the Complaint contends "that 'a minimum of three or four tape-out [revisions] would be expected,' and that the 'first or initial tape-out' is 'referred to as Rev A, followed by Rev B, Rev C, etc. None of this is reflected in the contract itself."[158] By disregarding the plain language

---

[154] *Id.*
[155] *Id.*
[156] MTD at 23 n.13.
[157] *Id.* (citations omitted).
[158] *Id.* at 11 (citing Am. Compl. ¶¶ 37–38, 42).

24

of the Merger Agreement, Renesas maintains that Plaintiff alleges that each tape-out of the GDS file (*i.e.*, each tape-out of a Rev) represented only "the final design <u>for that revision</u>."[159]  Renesas argues that Plaintiff's "interpretation would read the words 'completion' and 'final' out of the definition of the Tape-Out Milestone and render that requirement meaningless."[160]

Next, Renesas contends that Plaintiff concedes on the issue by making the "fatal" admission that Celeno "continued to revise the GDS file after the expiration of the Tape-Out Deadline, eventually providing another Rev of the GDS file to Samsung in late February 2022 (the 'February 2022 GDS File')".[161]  In addition, "[t]he Complaint's admission that the only GDS file that Samsung accepted was the February 2022 GDS File constitutes another, separate reason Celeno failed to satisfy" the Milestone.[162]

Renesas similarly argues that Plaintiff's March 2, 2022 Objection Notice "plainly conceded" that the Tape-Out Milestone was not met by stating "the Company substantially performed the requirements of Schedule 2.06(a)(i) to the Merger Agreement—in excess of 99 percent—and any remaining components were immaterial and insignificant.'"[163]

Renesas argues that the Complaint therefore offers "internally inconsistent allegations claiming both that the January 2022 GDS File 'materially complied' with the Merger Agreement and that the Tape-Out Milestone Deadline was not a real deadline."[164]

Plaintiff responds that its statements do not concede the Tape-Out Milestone was not met for two reasons.  First, because these statements do not function as "judicial admissions"; and

---

[159] *Id.* at 23 (citing Am. Compl. ¶ 30) (emphasis added—not in original).
[160] *Id.* (citing Merger Agreement Schedule 2.06(a)(i); and *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 287 (Del. 2001) ("Contracts are to be interpreted in a way that does not render any provisions illusory or meaningless.") (quotation marks and citations omitted)).
[161] *Id.* at 11 (citing Am. Compl. ¶¶ 37–38, 42).
[162] *Id.* (citing Am. Compl. ¶¶ 40, 35, 42).
[163] *Id.* at 28 (quoting March 2 Objection Notice).
[164] *Id.* at 23-24 (citing Am. Compl. ¶¶ 36-37, 42).

second, because the language of the Tape-Out Milestone is not as straightforward as Renesas suggests and requires "commercial context" to be properly understood.

Plaintiff devotes several pages of its Opposition Brief to counter Renesas's argument "that 'judicial admissions' negate the Tape-Out Milestone breach of contract claim alleged in the Amended Complaint."[165] Plaintiff states "Renesas has identified no such admissions. And none exist."[166]

Under Delaware law, "judicial admissions" are "[v]oluntary and knowing concessions of fact made by a party during judicial proceedings (e.g., statements contained in pleadings, stipulations, depositions, or testimony; responses to requests for admissions; counsel's statements to the court) . . . ."[167] "A judicial admission is not merely another layer of evidence, upon which the . . . court can superimpose its own assessment of weight and validity. It is, to the contrary, an unassailable statement of fact that narrows the triable issues in the case."[168]

Plaintiff first contends that the March 2, 2022 Objection Notice does not qualify because "[u]nder Delaware law, judicial admissions are statements made as part of judicial proceedings, not correspondence sent long before a case began."[169] Further, Plaintiff asserts that "even if that were not the case" the statement still would not qualify because "a judicial admission is limited to factual matters, not legal theories, legal conclusions, legal arguments, or other terms of art utilized by counsel or parties."[170]

---

[165] Opp'n at 36 (citing MTD at 28).
[166] *Id.*
[167] *Twin Willows, LLC v. Pritzkur, Tr. for Gibbs*, 2022 WL 3039775, at *6 (Del. Ch. Aug. 2, 2022), *report and recommendation adopted sub nom. Twin Willows, LLC v. Pritzkur* (Del. Ch. 2022) (citation omitted).
[168] *Id.* (quotations and citations omitted).
[169] Opp'n at 38.
[170] *Id.* (citing *AT&T Corp. v. Lillis*, 953 A.2d 241, 257 (Del. 2008) (citation omitted) ("The scope of a judicial admission by counsel is restricted to unequivocal statements as to matters of fact which otherwise would not require evidentiary proof; it does not extend to counsel's statement of his conception of the legal theory of a case, i.e., legal opinion or conclusion."); *see also Blinder, Robinson & Co. v. Bruton*, 552 A.2d 466, 474 (Del. 1989); *InterMune, Inc. v. Harkonen*, 2023 WL 3337212, at *2 (Del. Ch. May 10, 2023)).

Plaintiff next argues that "a single allegation in the Amended Complaint that Celeno 'materially complied' with Schedule 2.06(a)(i)" is not "an admission that Celeno did not comply with the Schedule in all respects."[171] Plaintiff contends that this "common pleading allegation" neither admits or concedes "unequivocally" that Celeno did not "complete the Tape-Out Milestone is all required respects, particularly when other allegations of the Amended Complaint allege[] that the Milestone was satisfied."[172]

As an initial matter, the Court may properly consider the language of the correspondence as incorporated by reference into the Complaint. Here, *In re Gardner Denver, Inc.* is instructive:

> With the allegations of the complaint, the plaintiff ordinarily defines the universe of facts from which the Court is to determine, upon a motion to dismiss under Rule 12(b)(6), whether there is a reasonably conceivable basis for recovery. . . . [T]he universe of facts is typically limited to the allegations of the complaint and any documents attached to it. . . . But, the Delaware Supreme Court has recognized three exceptions to this rule by which the Court may consider certain documents extraneous to a complaint for carefully limited purposes [including] . . . when the document is integral to a plaintiff's claim and incorporated into the complaint . . . . Whether a document is integral to a claim and incorporated into a complaint is largely a facts-and-circumstances inquiry. . . . a general tendency is that the Court may conclude a document is integral to the claim if it is the "source for the . . . facts as pled in the complaint."[173]

Because the documents are both referenced throughout the Complaint and function as a source of facts as pled in the complaint, the Court may consider their contents in deciding this Motion. Furthermore, regardless of whether Plaintiff's statements (in either the Complaint or the documents referenced therein) are "judicial admissions," those statements (as pled) nevertheless suggest that Celeno did not satisfy its obligations under the Tape-Out Milestone.

---

[171] *Id*. at 40 (quoting MTD at 28-29 (citing Am. Compl. ¶ 37)).

[172] *Id*.

[173] *In re Gardner Denver, Inc*., 2014 WL 715705, at *2-3 (Del. Ch. Feb. 21, 2014) (quoting *Orman v. Cullman*, 794 A.2d 5, 16 (Del. Ch. 2002) (additional quotations and citations omitted)).

Plaintiff further argues that the Tape-Out Milestone must be understood in context, and that "Renesas proffers a construction of the relevant Merger Agreement provision based upon a two-word snippet that ignores the Tape-Out Milestone's technical language and usage and [Plaintiff's] well-pleaded specific allegations regarding the customary meaning of the provision within the highly-complex, engineering driven semiconductor industry."[174] Plaintiff contends that it is "impossible" to understand the Tape-Out Milestone in this transaction "without reference to the customs, practices, and 'engineering terms of art' essential to the design, development, and manufacture of cutting edge semiconducting chips that were not defined in the Merger Agreement."[175] Plaintiff claims that such "industry-specific concepts, language, and frameworks undoubtedly drove the negotiation and drafting of the Merger Agreement, by which one semiconductor company acquired another, and the reasonable expectations of Celeno and the Equityholders based on customary interpretations of commonly-applied and used industry terms."[176]

Plaintiff here implies that the meaning of the Merger Agreement is in dispute, and, as such, "'[d]ismissal, pursuant to Rule 12(b)(6), is proper only if the defendants' interpretation is the *only* reasonable construction as a matter of law.'"[177]

Plaintiff supports its claim that the need for extrinsic evidence to understand the terms of the Merger Agreement defeats Renesas's Motion with citations discussing how the "commercial context" of certain agreements must be considered in order to interpret those agreements accurately.[178] However, as Renesas points out, Plaintiff's cited authority discusses contracts

---

[174] Opp'n at 3.
[175] *Id*.
[176] *Id*.
[177] *Id*. at 20 (quoting *VLIW Tech,* 840 A.2d at 615 (emphasis supplied) (citation omitted)).
[178] Opp'n at 20-22.

28

found to be ambiguous as a preliminary matter by the courts charged with their interpretation.[179]

For example, in *Pharmaceutical Product Development, Inc. v. TVM Life Science Ventures VI, L.P.*, the court denied a motion to dismiss where the definition of the term at issue—"efficacy"—was dependent on context.[180] The court explained:

> Although recourse to extrinsic evidence is generally not appropriate in interpreting an unambiguous contract, that does not mean that the court must be blind to the general business context in which a given contract was negotiated. Given the reality that the same word can have more than one general meaning and that the commercial context can influence which meaning the parties intended, the court must take cognizance of the existence of those general meanings in determining whether a contract has only one plausible meaning.[181]

Similarly, in *Concord Steel, Inc. v. Wilmington Steel Processing Co., Inc.*, the meaning of two terms was at issue and the court found only one to be ambiguous.[182] Though the court ultimately declined to consider extrinsic evidence because it would not have altered its conclusion, it nevertheless acknowledged that "extrinsic evidence would be admissible to determine the parties' intent regarding [the ambiguous] term" whereas there was no need to do so for the unambiguous term.[183]

Renesas contends that, unlike the ambiguous terms in *Pharmaceutical Product Development* and *Concord Steel*, "the words 'completion' and 'final' are not susceptible to more

---

[179] Reply at 11.
[180] *Pharm. Prod. Dev., Inc. v. TVM Life Sci. Ventures VI, L.P.*, 2011 WL 549163, at *3 (Del. Ch. Feb. 16, 2011) (comparing definitions from the American Heritage Dictionary and a medical dictionary).
[181] *Id.* at *4 n.24 (citing *USA Cable v. World Wrestling Fed'n Entm't, Inc.*, 766 A.2d 462, 474 (Del.2000) (holding that where the relevant industry supplies no "gloss" on a word in a contract, courts should give the word its "ordinary dictionary meaning"); *Lorillard Tobacco Co. v. American Legacy Found.*, 903 A.2d 728, 740 (Del.2006) ("A court must accept and apply the plain meaning of an unambiguous term in the context of the contract language and circumstances, insofar as the parties themselves would have agreed *ex ante*.") (internal citations omitted) (emphasis added); 17A AM.JUR.2DContracts § 396 ("Business contracts must be construed with business sense as they naturally would be understood by intelligent persons of affairs, and in the same sense as is uniformly attached to them by the business world . . . . All mercantile contracts should be construed according to their plain meaning, to persons of sense and understanding, and not according to forced and refined interpretations which are intelligible only to lawyers.") (internal citations omitted).
[182] *Concord Steel,* 2009 WL 3161643, at *7.
[183] *Id.* at *9.

than one 'general meaning' in the commercial context."[184]  Moreover, Renesas contends that "the Merger Agreement read as a whole negates the notion that the parties intended the words 'completion' and 'final' be given a unique meaning just in the Tape-Out Milestone. Here, the Merger Agreement uses 'final' and 'completion' in their ordinary senses throughout."[185] Further, "[t]o give 'final' a unique meaning only for purposes of the Tape-Out Milestone requirement would render the use of 'final' inconsistent within the same agreement, which is impermissible under Delaware law."[186]

On its face, the language of the Tape-Out Milestone establishes straightforward completion requirements and time frames.  Though Plaintiff's argument that commercial context should inform the Court's interpretation of the Merger Agreement is reasonable, it is not reasonable to conclude that these sophisticated parties failed to adequately define the parameters of their agreement within its four corners in certain places but not in others.

The Court is not prepared to find, at this early stage, that the Tape-Out Milestone is ambiguous and requires extrinsic evidence to be understood.  However, the Court is not prepared to find that Plaintiff is barred from proceeding on a basically well-pled complaint on the theory of judicial admissions when Plaintiff was not provided an opportunity to avail itself of Merger Agreement Section 2.06(b)(ii)[187] and Merger Agreement Section 2.06(b)(iii).[188]  Focused

---

[184] Reply at 11.
[185] Id. at 12 (citing Merger Agreement §§ 2.05, 2.06(c), 2.08, 3.01, 3.05(d), 3.06(a), 3.11, 3.12(a), 3.13(d), 3.20(b), 3.23, 12.1(b), 2.12(a)).
[186] Id. (citing Soleimani v. Hakkak, 2024 WL 1593923, at *9 (Del. Ch. Apr. 12, 2024), judgment entered sub nom. Isaac Soleimani & Ine Soleimani LP v. Hakkak (Del. Ch. 2024) "The same words . . . used in different parts of a contract should be interpreted similarly."); Giesecke+Devrient Mobile Sec. Am., Inc. v. Nxt-ID, Inc., 2021 WL 982597, at *10 (Del. Ch. Mar. 16, 2021), judgment entered sub nom. Giesecke+Devrient Mobile Sec. Am., Inc. v. NXT-ID, Inc. (Del. Ch. 2021) (It is a "well-accepted canon of contract construction that absent anything indicating a contrary intent, the same phrase should be given the same meaning when it is used in different places in the same contract.") (quotations and citation omitted); 11 Williston on Contracts § 32.6 (4th ed. 1990) ("Generally, a word used by the parties in one sense will be given the same meaning throughout the contract in the absence of countervailing reasons.").
[187] Merger Agreement § 2.06(b)(ii).
[188] Id. § 2.06(b)(iii).

discovery should resolve this issue and, most likely, can be handled with subsequent motion practice. Accordingly, the Motion is **DENIED** as to Count I.

### 3. *Plaintiff States a Claim Under Count II.*

As with the Tape-Out Milestone, Renesas contends that requirements for the Mass Production Milestone are clearly contained in the Merger Agreement, and that the Amended Complaint concedes Plaintiff's failure to meet those requirements.

Plaintiff responds that the Court should give Renesas's argument "short shrift" as being "improperly based on Renesas's one-sided version of facts that appear nowhere in the Amended Complaint and gross mischaracterizations of correspondence predating the commencement of this litigation."[189]

Renesas states that, pursuant to Merger Agreement Section 2.06(a)(iii) and Schedule 2.06(a)(iii), "the Mass Production Milestone required the [REDACTED] Product to 'pass[] relevant FCC certification tests, reliability qualification, data-sheet, test program, cost meeting target for yields, test times, die cost and package cost'" and that the Merger Agreement specified "what testing parameters, costs, and other criteria" the Milestone involved.[190] In Section 2.06(a)(iii) the parties also "agreed to a deadline—as a defined term—of November 30, 2022 for the completion" of the Milestone, as well as a two-month grace period extending the time for completion to January 30, 2023 under Section 2.06(a)(v)(C).[191]

Renesas states "Celeno did not achieve the Mass Production Milestone by the Mass Production Deadline because the [REDACTED] Product had not (and still has not) 'passed

---

[189] Opp'n at 41.
[190] MTD at 13.
[191] *Id.* at 12-13 (also citing Am. Compl. ¶ 44).

relevant FCC certification tests, reliability qualification, data-sheet, test program, cost meeting target for yields, test times, die cost and package cost'" as the Merger Agreement requires.[192]

Renesas summarizes:

Nothing in the language of the Merger Agreement implies that these specific requirements, stated in mandatory language, were mere guideposts or suggestions. The parties, represented by sophisticated counsel, carefully negotiated the Merger Agreement, and in doing so, agreed to the conditional language requiring the Earn-Out Milestones be completed on or before a defined deadline in order to receive payment of the Milestone Amount. If the parties had intended to require Celeno to only "materially" complete the Earn-Out Milestones, the parties could easily have agreed to different, less exacting language.[193]

Renesas states that the Amended Complaint does not claim the March 2, 2022 Failure Notice was inaccurate, only that it "was inconsistent with messages Renesas provided months earlier that unspecified aspects of the Milestone were 'on track.'"[194]  Renesas contends Plaintiff's March 22, 2023 Objection Notice "admits [Plaintiff] lacks information to challenge the accuracy of the Failure Notice."[195]

Renesas claims to have explained why the Milestone was not achieved both in the March 7, 2023 Mass Production Milestone Failure Notice,[196] and their May 19, 2023 letter responding to Plaintiff's request for details of the Failure.[197]

Renesas contends Plaintiff's responses to those letters and the Complaint either concede Celeno's failure to meet the Mass Production Milestone or fail to allege non-conclusory facts to the contrary. "Neither in its correspondence nor in its Complaint has Plaintiff alleged facts

---

[192] *Id.* at 14-15 (quoting Merger Agreement Schedule 2.06(a)(iii)).
[193] *Id.* at 24 (citing Am. Compl. ¶¶ 32, 42, 44; *see also W. Willow-Bay Ct., LLC v. Robino-Bay Ct. Plaza, LLC*, 2007 WL 3317551, at *9 (Del. Ch. Nov. 2, 2007), *aff'd*, 985 A.2d 391 (Del. 2009), *as corrected* (Nov. 30, 2009) ("The presumption that the parties are bound by the language of the agreement they negotiated applies with even greater force when the parties are sophisticated entities that have engaged in arms-length negotiations.")).
[194] *Id.* at 15 (quoting Am. Compl. ¶ 50).
[195] *Id*. (citing Am. Compl. ¶ 50; March 22, 2023 Letter from R. Simkin to Renesas Electronics Corporation (hereinafter "Mar. 22 Objection Notice") (D.I. No. 26 Ex. 6) (referenced in Am. Compl. ¶¶ 50-51)).
[196] Mass Production Milestone Failure Notice.
[197] May 19 Letter.

demonstrating that the [REDACTED] Product met the specific requirements of the Mass Production Milestone by the contractually defined deadline."[198]

Next, Renesas argues the April 13, 2023 Objection Notice contends that the Mass Production Milestone was achieved "without offering any factual underpinning."[199] Instead, Renesas contends that the Objection Notice "claimed entitlement to payment . . . solely because Renesas did not inform Plaintiff of the Milestone failure sooner."[200]

Finally, Renesas contends that the Amended Complaint's claim that Plaintiff satisfied the Mass Production Milestone "in all material respects" acts as a concession that the Milestone was not achieved.[201] Further, "nowhere does the Complaint allege any specific facts from which the Court could reasonably infer that each of the requirements were satisfied . . . ."[202]

Moreover, Renesas argues that, even if "the Merger Agreement required only 'material' completion of the Milestones (contrary to the Merger Agreement's express language), Plaintiff's position still fails because there has plainly been a material miss to the milestone triggers."[203] Renesas contends that, though "Plaintiff admits that the Mass Production Milestone establishes 'reliability qualification, test program, and cost metrics,'" the Complaint nevertheless fails to plead "any specific, non-conclusory facts showing that the Mass Production Milestone was actually met" and "simply declares, without any factual support, the conclusion that 'Celeno satisfied the Mass Production Milestone and met the requirements as set forth in Schedule

---

[198] MTD at 17 (citations omitted).
[199] *Id.* at 15 (citing Apr. 13 Objection Notice).
[200] *Id.* at 15-16 (citing April 13, Objection Notice).
[201] *Id.* at 17 (citing Am. Compl. ¶ 49).
[202] *Id.* (quoting Am. Compl. ¶ 49).
[203] *Id.* at 26.

2.06(a)(iii) in all material respects.'"[204]  Renesas contends such "bare legal conclusions without factual support are insufficient under Delaware law."[205]

In response, Plaintiff repeats its position that it is "not required to allege in its pleading facts negating or refuting Renesas's version of the facts."[206]

As to Renesas's argument that the [REDACTED] Product has not "passed relevant FCC certification tests, reliability qualification, data-sheet, test program, cost meeting target for yields, test times, die cost and package cost," Plaintiff states that Renesas relies not on the Complaint but "a letter from Renesas's prior counsel";[207] that "there is no such allegation in the Amended Complaint"; and that "[a] letter from a defendant's counsel asserting the defendant's own version of the facts provides no basis for dismissal at the pleading stage. That is particularly the case here, where the defendant's letter is alleged in the plaintiff's complaint to be inaccurate."[208]

Next, Plaintiff contends that the March 22, 2022 Objection Notice does not contain an admission Plaintiff lacked information to challenge the failure determination but rather that it states a request for Renesas to "identify the basis for its contention that the" Milestone was not satisfied and to provide supporting documentation.[209]  Plaintiff emphasizes certain language to this effect: "[T]he Equityholder Representative requested that Renesas 'identify in writing any matter set forth in Schedule 2.06(a)(iii) that *allegedly was not completed*' and to 'provide the

[204] *Id*. (citing Am. Compl. ¶¶ 45, 49, 67).
[205] *Id*. (citing *Red Cat Holdings, Inc. v. Autonodyne LLC*, 2024 WL 342515, at *9 (Del. Ch. Jan. 30, 2024) ("Notwithstanding Delaware's permissive pleading standard, the court may disregard mere conclusory allegations made without specific allegations of fact to support them.") (quotations and citation omitted).
[206] Opp'n at 42 (citing *VLIW Tech.,* 840 A.2d at 611 (citation omitted)).
[207] *Id.* at 41-42 (quoting MTD at 14-15).
[208] *Id.* at 42 (citing Am. Compl. ¶ 53).
[209] *Id.* at 43.

relevant data or other details that *Parent [Renesas] contends* support its determination that the Mass Production Milestone was not satisfied.'"[210]

Plaintiff also reiterates its position that its phrasing of "in all material respects" is "not a judicial admission that the Mass Production Milestone was not satisfied in any respects, particularly when [Plaintiff] alleges that the Mass Production Milestone was met."[211]

The Court will follow the same reasoning as it did with Count I. Renesas makes strong arguments but, at this stage of the proceedings, the Court is not inclined to read that the Amended Complaint and pre-ligation correspondence as admissions by Plaintiff that the Mass Production Milestone had not been met. The Court is not finding that the Merger Agreement is ambiguous or that there is a materiality qualifier in the Mass Production Milestone; however, the Court feels targeted discovery (along the lines of what could have been provided under Agreement Section 2.06(b)(ii) and Merger Agreement Section 2.06(b)(iii)) should resolve the dispute as to Count II. The Motion is **DENIED** as to Count II.

B. **PLAINTIFF FAILS TO STATE A CLAIM AS TO COUNT IV.**

"The road to injunctive relief is well worn. [The Court] must find that a plaintiff has prevailed on the merits, legal relief is inadequate, and the equities balance in favor of relief."[212]

Renesas argues that Count IV should be dismissed because (i) Plaintiff fails to allege irreparable harm; and (ii) Plaintiff has an adequate remedy at law.[213]

Plaintiff responds that "Renesas's argument fails for two reasons. First, Count Four seeks specific performance, not injunctive relief."[214] As such, Plaintiff contends that "[s]pecific

---

[210] *Id*. (quoting Mar. 22 Objection Notice) (emphasis added—not in original)).
[211] *Id*. at 44 (citing Opp'n at 38; Am. Compl. ¶¶ 3, 44 (Heading B), 49, 52, 54, 67, 68).
[212] *In re Energy Transfer Equity, L.P. Unitholder Litig.*, 2018 WL 2254706, at *27 (Del. Ch. May 17, 2018), *judgment entered sub nom. In re Energy Transfer Equity* (Del. Ch. 2019), and *aff'd sub nom. Levine v. Energy Transfer L.P.*, 223 A.3d 97 (Del. 2019).
[213] MTD at 34.
[214] Opp'n at 48-49.

performance does not require irreparable harm but, rather, only that the balance of the equities tip in favor of the party seeking the remedy."[215]

Plaintiff argues that it has "easily" established the requirements for specific performance: "'(1) a valid contract exists; (2) [the party] is ready, willing, and able to perform; and (3) that the balance of the equities tips in favor of the party seeking performance.'"[216]

Plaintiff's second reason is inconsistent with its first. Plaintiff states:

> Second, the parties included in the Merger Agreement an express provision by which they agreed that "irreparable damage" would result from a breach of the Merger Agreement and entitle the non-breaching party to "enforce specifically" the relevant Merger Agreement terms and provision.[217] The parties' stipulation in the Merger Agreement to the existence of irreparable harm is typically sufficient to establish irreparable harm in the absence of Renesas demonstrating that "the facts plainly do not warrant such a finding."[218]

Plaintiff's attempt to distinguish specific performance from injunctive relief is misplaced because "[s]pecific performance is a specialized form of mandatory injunction that requires a party to fulfill its contractual obligations."[219]

Further, specific performance is "a remedy for a *proven* breach of contract."[220] Indeed, Section 13.11 is invoked by a breach of the Merger Agreement. Significantly, specific performance is only available to a party who shows that the "typical" remedy for breach of contract—damages—would not provide adequate relief and therefore "a 'not-typical' remedy is

---

[215] *Id.* at 49.

[216] *Id.* at 48 (quoting *Osborn,* 991 A.2d at 1158).

[217] *Id.* at 49 (citing Merger Agreement § 13.11).

[218] *Id*. (quoting *Endowment Rsch. Grp., LLC v. Wildcat Venture Partners, LLC*, 2021 WL 841049, at *8 (Del. Ch. Mar. 5, 2021) ("Delaware courts give some presumptive weight to contractual stipulations of irreparable harm and typically require that a party seeking to avoid the force of the stipulation demonstrate that the facts plainly do not warrant such a finding. Wildcat provides no compelling reason to cast aside the parties' bargain in this case.") (quotations and citation omitted)).

[219] *26 Cap. Acquisition Corp. v. Tiger Resort Asia Ltd*., 309 A.3d 434, 464 (Del. Ch. 2023) (citing *Certainteed Corp. v. Celotex Corp.*, 2005 WL 217032, at *6 (Del. Ch. Jan. 24, 2005)).

[220] *Id.* (emphasis supplied).

warranted. If damages would provide adequate relief, then specific performance is not available."[221]

It is unclear how to reconcile the standards for injunctive relief and specific performance under these circumstances.

The question then becomes whether specific performance is warranted. That inquiry is informed by the overlapping elements of irreparable harm, the adequacy of monetary damages, and the balance of the equities.

### 1. Irreparable Harm

First, Merger Agreement Section 13.11 appears sufficient to establish irreparable harm.

Renesas argues that "it is settled law that the parties' boilerplate cannot foist equitable jurisdiction on the Court where none exists."[222] The line of cases considering the effect of a contractual provision establishing irreparable harm notes that such a provision does not require the Court to ignore facts that "plainly do not warrant a finding of irreparable harm" because "'parties cannot confer subject matter jurisdiction upon a court.'"[223] Stated succinctly: "The existence of such a provision is sufficient to support a decree of specific performance but does not mandate its issuance."[224]

However, "where there is no concern that the parties are attempting to improperly confer equitable jurisdiction upon this Court, a defendant cannot successfully argue that there is no irreparable harm."[225] Further, parties in Delaware "can agree contractually on the existence of requisite elements of a compulsory remedy . . . and, in keeping with the contractarian nature of

---

[221] *Id.* (citations omitted).
[222] MTD at 36-37 (citation omitted).
[223] *Kansas City S. v. Grupo TMM, S.A.*, 2003 WL 22659332, at *5 (Del. Ch. Nov. 4, 2003) (quoting *Butler v. Grant*, 714 A.2d 747, 749-50 (Del. 1998)).
[224] *26 Cap. Acquisition Corp.,* 309 A.3d at 465.
[225] *Kansas City S.*, 2003 WL 22659332, at *5 (citation omitted).

Delaware corporate law this court has held that such a stipulation is typically sufficient to demonstrate irreparable harm."[226]

The Court has denied the Motion as to Counts I and II. As such, irreparable harm seems to be established by the terms of the Merger Agreement—the terms of which Renesas contends are unambiguous and should be enforce. Though this is not sufficient to justify the remedy of specific performance, it is sufficient to establish irreparable harm as a factor in that analysis.

### 2. Adequacy of Damages

Renesas argues that Plaintiff has not alleged injury "from any failure to negotiate the Milestone Earn-Out Payments beyond the harm asserted in Counts One and Two, seeking the Milestone Amounts themselves."[227] Renesas contends that, fundamentally, "[t]his case is about money—namely the two Milestone Earn-Out Payments ($[REDACTED]) that Plaintiff seeks. The Complaint makes clear that the Plaintiff's sole objective is to obtain those payments" and that the allegation Plaintiff "was denied the opportunity to negotiate payment Milestones it had not earned . . . is not irreparable harm, and it is manifestly compensable by money damages."[228]

Plaintiff does not address this element directly but rather cites authority where "Delaware courts have enforced parties' obligations to meet in good faith in other contexts."[229] However, the validity of a provision requiring the parties to meet is not at issue.

---

[226] *Martin Marietta Materials, Inc. v. Vulcan Materials Co.*, 56 A.3d 1072, 1145 (Del. Ch.), *aff'd*, 45 A.3d 148 (Del. 2012), *and aff'd*, 68 A.3d 1208 (Del. 2012), *as corrected* (July 12, 2012) (citations omitted).
[227] MTD at 35.
[228] *Id.* at 35-36.
[229] Opp'n at 51-52 (citing *Itron, Inc. v. Consert Inc.*, 109 A.3d 583, 594 (Del. Ch. 2015) (ordering the parties to "meet and confer in good faith" pursuant to Chancery Rule 16); *BAE Sys. Info. & Elec. Sys. Integration, Inc. v. Lockheed Martin Corp.*, 2009 WL 264088, at *5 (Del. Ch. Feb. 3, 2009) (holding that the parties' Memorandum of Understanding contained a provision requiring the parties to meet, and that plaintiff "has pled facts sufficient to find that this binding obligation exists, in a form definite enough for enforcement, and has been breached.")

Renesas contends that "Plaintiff does not meaningfully dispute" Renesas's contention that Plaintiff "concedes here that money damages (*i.e.* a monetary payment of the Earnout Milestones) would provide Plaintiff with complete and adequate relief."[230]

The relief Plaintiff seeks under Count IV is enforcement of Section 2.06(b)(iii)'s requirement that the parties meet to discuss disputes following the delivery of an Objection Notice and before submitting the dispute to a court.[231] Renesas argues that Plaintiff has "unsurprisingly" failed to cite any authority to supports Plaintiff's contention that "specific enforcement of a contractual provision requiring the parties to engage in a pre-suit discussion within 30 days after a dispute arises warrants forcing the parties to meet by videoconference after the parties are already many months into litigation pertaining to the very same dispute."[232]

In light of this pending civil action, the Court wonders how specific performance of this meeting requirement would function at this point in time. As Renesas argues, "there is nothing meaningful that a further call between the parties could achieve, and nothing prohibits Plaintiff's counsel from discussing any issues of concern with Defendant's counsel at any time."[233]

It appears that the relief sought is, as Renesas argues, payment of the Earnout Amounts. As such, monetary damages provide an adequate remedy to Plaintiff and specific performance is not available.

---

[230] Reply at 21 (citing MTD at 35-37).
[231] *See* Am. Compl. ¶¶ 55-59; Merger Agreement § 2.06(B)(iii)).
[232] Reply at 21.
[233] *Id.* at 24.

### 3. *Balance of the Equities*

Neither party substantively addresses the balance of the equities until Renesas's Reply Brief, in which Renesas essentially contends that a meeting between the parties would be "inequitable and futile because the ultimate remedy Plaintiff seeks is money."[234]

Renesas's argument here echoes its contention that Plaintiff is seeking monetary damages, "not an order forcing Renesas to have a videoconference with Plaintiff about the Milestone failures after already having litigated this case for almost a year."[235] Renesas cites *Dave Greytak Enterprises, Inc. v. Mazda Motors of America, Inc.* for the proposition that a contractual provision directing the parties to attempt to resolve disputes "through good faith negotiations, involving open, frank and constructive discussions" did not necessarily "evidence that the parties intended by this provision to create a specifically enforceable 'duty to negotiate.'"[236] Rather, the *Greytak* Court held that the provision had to be "considered in its entirety and in context" to ascertain the parties' intent when including it in their agreement.[237]

Moreover, "the law does not require a futile act."[238] The provision at issue specifically calls for a meeting within thirty days of a dispute. Even if the Court were to find that Renesas breached its obligations under that provision, the remedy, again, is payment of the Earnout Amounts, not specific performance of the meeting provision.

Because only the element of irreparable harm as established by the Merger Agreement tips in Plaintiff's favor, the Court will **GRANT** the Motion as to Count IV.

---

[234] *Id*. (citing MTD at 35-37).

[235] *Id*.

[236] *Dave Greytak Enterprises, Inc. v. Mazda Motors of Am., Inc.*, 622 A.2d 14, 23–24 (Del. Ch. 1992), *aff'd sub nom. David Greytak Enterprises, Inc. v. Mazda Motors of Am., Inc.*, 609 A.2d 668 (Del. 1992)).

[237] *Id.* at 23.

[238] *Rsrvs. Dev. LLC v. R.T Properties, L.L.C.*, 2011 WL 4639817, at *7 (Del. Super. Sept. 22, 2011) (citations omitted).

## V.    CONCLUSION

For the reasons stated above, the Court will **DENY** in part and **GRANT** in part the

Motion.

**IT IS SO ORDERED.**

December 3, 2024
Wilmington, Delaware

*/s/ Eric M. Davis*
Eric M. Davis, Judge

cc:    File&ServeXpress